Ronald D. DILLEE, M.D., P.A.
and Ronald D. Dillee, M.D.,
Appellants,

v.

SISTERS OF CHARITY OF the INCAR-
NATE WORD HEALTH CARE SYS-
TEM, HOUSTON, TEXAS, d/b/a St.
Mary's Hospital, Appellee.

No. 14–94–00659–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 19, 1995.

Rehearing Overruled Dec. 14, 1995.

Gary L. McConnell, Angleton, for appellants.

Robert J. Swift, Houston, John Wesley Raley, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

In this wrongful discharge case, Ronald D. Dillee, M.D., P.A. and Ronald D. Dillee, M.D. (jointly "Dillee"), challenge a summary judgment granted in favor of Sisters of Charity of the Incarnate Word Health Care System, Houston, Texas, d/b/a St. Mary's Hospital ("St. Mary's") on the grounds that his discharge violated his due process rights. We affirm.

From 1983 to 1988, Dillee was employed by St. Mary's as an "in-house" radiologist. In 1988, St. Mary's contracted with Dillee, through his professional association, to operate and manage St. Mary's radiology department, and have the exclusive right to provide radiology services there.

In consideration for this exclusive arrangement, among other things, the contract gave St. Mary's the right to terminate without cause or due process:

4.4 WITHOUT CAUSE. Notwithstanding any current or future Hospital or Medical Staff bylaw, rule or regulation to the contrary, either party may terminate this Agreement at any time without cause upon ninety days written notice.

[1.10] Notwithstanding any current or future Hospital or Medical Staff bylaws, rules, or regulations to the contrary, ... [Dillee] waives due process notice, hearing, and review in the event membership and privileges are terminated because of the termination of the Agreement....

Similarly, paragraph 4 of the "Individual Physician Acknowledgement," of the contract, which was separately signed by Dillee, provided "I waive *any due process rights* to notice, hearing, and review in the event my Medical Staff membership and privileges are terminated...." (emphasis added).

■ For 1990, the last full year this agreement was in effect, Dillee's net earnings therefrom were estimated at about one million dollars. In February of 1991, after nearly three years, St. Mary's terminated Dillee's employment pursuant to the foregoing provisions, without a hearing. Dillee thereafter brought suit against St. Mary's alleging that this termination was a violation of his constitutional and contractual rights to due process because (1) St. Mary's was a "state actor" and his medical staff privileges were property rights,[1] (2) his termination breached a contract between St. Mary's and the Joint Commission on Accreditation of Health Care Organizations ("JCAHO") in which St. Mary's agreed to provide its medical staff with due process rights upon termination, and to which he was a third-party beneficiary,[2] and (3) St. Mary's negligently failed to

---

1. A constitutionally protected property interest is an individual entitlement grounded in state law which cannot be removed except for cause. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982); *Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 418 (Tex.1993). In this case, the waiver provisions of the contract therefore included that which provided for termination without cause as well as those expressly waiving due process.

2. The JCAHO is a private, non-profit accreditation organization for hospitals and other health

care entities. *See generally* Roberts, Coale and Redman, *A History of the Joint Commission on Accreditation of Hospitals*, 258 J.A.M.A. 936 (1987); Joint Commission on Accreditation of Health Care Organizations, Accreditation Manual for Hospitals (1991); Richard L. Griffith and Jordan M. Parker, *With Malice Toward None: The Metamorphosis of Statutory and Common Law Protections for Physicians and Hospitals in Negligent Credentialing Litigation*, 22 Tex.Tech L.Rev. 157, 170 (1991).

provide him with due process rights according to its duty under the Texas Constitution.[3]

St. Mary's filed a motion for summary judgment on the grounds that Dillee had no constitutional or contractual due process rights because (a) St. Mary's is not a state actor, (b) Dillee's medical staff privileges were not property rights, (c) Dillee effectively waived any due process rights, and (d) Dillee was not a third-party beneficiary of a contract between St. Mary's and JCAHO. The trial court granted this motion for summary judgment without specifying the grounds therefor.

In a single point of error, Dillee contends that the trial court erred in granting summary judgment, and attacks each of the four bases on which summary judgment was granted. Because we conclude that any due process rights Dillee alleged were waived, we confine our discussion to the issue of waiver and express no opinion on the existence of any such due process rights.

■ In reviewing a summary judgment, we must determine whether the movant established that there was no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1989). In deciding whether there is a material fact issue, evidence favorable to the non-movant will be taken as true, and every reasonable inference will be indulged, and any doubts resolved, in favor of the non-movant. *Id.* When a summary judgment does not specify the grounds on which it was granted, it must be affirmed if any ground stated in the motion has merit. *State Farm Fire & Cas. Co. v. S.S. & G.W.*, 858 S.W.2d 374, 380 (Tex.1993).

■ A contract right may be waived if there is an intentional relinquishment of that right. *See Huffington v. Upchurch*, 532

S.W.2d 576, 579–80 (Tex.1976). Constitutional rights may also be waived contractually if done so voluntarily, intelligently, knowingly, i.e., with full awareness of the legal consequences. *D.H. Overmyer Co., Inc. v. Frick Co.*, 405 U.S. 174, 187, 92 S.Ct. 775, 783, 31 L.Ed.2d 124 (1972). However, depending on the facts of a particular case, such a waiver might not be enforceable where the contract is one of adhesion,[4] there is great disparity in bargaining power, or a party receives nothing in return for the waiver. *Id.*[5]

■ A disparity of bargaining power exists when one party has no real choice in accepting the terms of the agreement. *Allright, Inc. v. Elledge*, 515 S.W.2d 266, 267 (Tex.1974); *Crowell v. Housing Auth. of Dallas*, 495 S.W.2d 887, 889 (Tex.1973) (holding that such disparity existed where low income tenant had no choice but to accept lease terms to get decent housing accommodations). Conversely, disparity in bargaining power does not exist where a claimant has freedom of choice in entering into the agreement. *See Allright*, 515 S.W.2d at 267–68; *Calarco v. Southwestern Bell Tel. Co.*, 725 S.W.2d 304 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (holding that no fact issue was raised regarding disparity where customer was free to do business with other telephone directory providers); *Federated Dep't Stores, Inc. v. Houston Lighting & Power Co.*, 646 S.W.2d 509 (Tex.App.—Houston [1st Dist.] 1982, no writ) (holding that no fact issue was raised as to disparity where Federated only alleged, but presented no evidence of, unequal bargaining position).

In this case, it is undisputed that the contract stated that Dillee, individually and as a professional association, waived due process notice, hearing, and review in the event of termination. However, Dillee contends that this waiver was not entered into voluntarily,

---

**3.** In oral argument, Dillee conceded that his third cause of action was negated by *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex. 1995).

**4.** An "adhesion contract" has been defined as a standardized contract form for consumer goods and services that are offered on a "take it or leave it" basis without affording the consumer a realistic opportunity to bargain and under such

conditions that consumer cannot obtain the desired product or services except by acquiescing. *See* BLACK'S LAW DICTIONARY 38 (5th ed. 1979).

**5.** *See also Fuentes v. Shevin*, 407 U.S. 67, 94–95, 92 S.Ct. 1983, 2001–02, 32 L.Ed.2d 556 (1972); *Gonzalez v. County of Hidalgo, Texas*, 489 F.2d 1043 (5th Cir.1973); *Rau v. Cavenaugh*, 500 F.Supp. 204 (D.S.D.1980); *Evans v. City of Chicago*, 522 F.Supp. 789 (N.D.Ill.1980).

intelligently and knowingly because St. Mary's drafted it, he had no bargaining power, St. Mary's presented it to him on a "take it or leave it basis," and he was not represented by legal counsel during negotiation and execution of the contract. Dillee claims that this presents a disputed fact issue which precludes summary judgment.

In support of its motion for summary judgment on this issue, St. Mary's submitted deposition testimony from another case in which Dillee described the contract at issue here in the following terms:[6]

[I]t was basically a services contract that gave me an exclusive right to the radiologic practice there at St. Mary's Hospital. For that right, I—I think this is most significant from my standpoint—for that right of exclusivity I had to waive my rights of due process upon any termination decision.

Moreover in the affidavit he filed in response to St. Mary's summary judgment motion, Dillee stated:

Included in the Agreement as paragraph 4.4, was a provision that allowed St. Mary's Hospital to terminate my employment without cause upon notice. Before I signed the Agreement, I spoke to Mr. Reed and told him that I did not like such a provision since, as a member of the hospital staff, I was accorded the right in medical staff bylaws to a review and hearing by a committee of any decision to terminate my employment to determine whether cause existed for such termination. Mr. Reed ... ultimately came back and told me that I had to sign the Agreement as written to continue my employment.... By 1988, both the radiology department and I were prospering. Also, by 1988, my wife and I ... had purchased a home.... When I was told by Mr. Reed that I had to "take it or leave it", I felt I had no choice but to sign the Agreement. At the time I signed the Agreement, ... I was not represented by an attorney....

The record further reflects that Dillee is highly educated, and the above testimony establishes that, despite his dislike for them, he was aware of and clearly understood the implications of the waiver provisions.[7]

Dillee argues, however, that there was unequal bargaining power in the transaction. He also argues that if he had been represented by legal counsel, they could have advised him that, because he already had due process rights as an employee of the hospital, he could not have been discharged for refusing to sign the agreement without being afforded due process. In other words, Dillee claims legal counsel could have advised him that he *did* have a choice whether to sign the agreement to that extent.

As to bargaining power, Dillee received a substantial contract right to exclusivity in return for the due process rights he waived, and profited handsomely for doing so. There was no evidence that he lacked the freedom to work elsewhere if he was dissatisfied with the terms offered by St. Mary's. In fact, the record indicates that he succeeded in finding other, albeit less profitable, employment after St. Mary's terminated his agreement. The fact that St. Mary's was willing to offer him so lucrative an arrangement strongly suggests that he had considerable bargaining power, otherwise St. Mary's would have had no reason to do so. This is further supported by Dillee's own contention that if he had been represented by legal counsel, they could have advised him that he had bargaining power to the extent of his alleged right not to be discharged without due process.

As to the lack of legal representation, it is important to distinguish a civil case, such as this, from a criminal prosecution in which the accused has a Sixth Amendment right to assistance of counsel, and is generally not deemed to waive other constitutional rights if counsel has not been provided or made available. *See, e.g., Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). In this case, Dillee had no Sixth Amendment right to an attorney,

---

6. Although Dillee objects to this deposition testimony as hearsay, we believe it was admissible as an admission by a party opponent. *See* Tex.R.Civ. Evid. 801(e)(2).

7. In addition, Dillee himself used similar termination provisions in a contract with one of his own employees.

and St. Mary's had no obligation to provide him with one or even recommend that he hire his own. Thus, Dillee's use or nonuse of counsel in entering into the agreement was strictly his own choice and beyond the control of St. Mary's. There being no indication that Dillee could not make an intelligent decision whether to seek legal advice, his failure to do so, whether due to oversight or conscious choice, does not justify allowing him to avoid his contractual undertaking at the expense of St. Mary's.

Based on the foregoing, we believe that the provisions of Dillee's contract with St. Mary's were effective as a matter of law to waive the constitutional and contractual due process rights he claimed, and that Dillee raised no fact issue as to the validity of that waiver. Accordingly, we affirm the judgment of the trial court.