**AMERICAN EMPLOYERS' INSURANCE COMPANY, Commercial Union Insurance Company, the Employers' Fire Insurance Company, the Northern Assurance Company of America, and Cu Lloyds of Texas, Appellant**

v.

**Lanny AIKEN, LaVera Aiken and Lanny Aiken Insurance Agency, Inc., Appellee.**

No. 2–96–295–CV.

Court of Appeals of Texas, Fort Worth.

March 13, 1997.

Rehearing Overruled April 24, 1997.

David R. Hudgins, Tom J. Stollenwerck, Dallas, for appellant.

David Martin, Waco, for appellee.

Before DAY, LIVINGSTON and HOLMAN, JJ.

## OPINION

HOLMAN, Judge.

This interlocutory appeal is authorized by TEX.CIV.PRAC. & REM.CODE ANN. § 171.017(Vernon Supp.1997).[1] A group of insurance companies collectively called "Commercial Union" appeal the trial court's denial of their motion to compel arbitration

---

**1.** Formerly TEX.REV.CIV.STAT.ANN. art. 238–2, redesignated as TEX.CIV.PRAC. & REM.CODE ANN.

§ 171.017, Acts 1995, 74th Leg., ch. 588, § 1, eff. Sept. 1, 1995.

and stay the lawsuit of an insurance agency and the agency shareholders, who claim the insurers wrongfully terminated its agency agreement. *See* id. § 171.002. The appeal challenges the trial court's findings that the agency's claims are not within the scope of the agency agreement's arbitration provision and that the provision is unconscionable and unenforceable. *See id.* § 171.001. Because the evidence establishes that the agency's claims are within the scope of the arbitration provision and because that provision is valid, enforceable, and not unconscionable, we reverse.

### Background

Lanny Aiken and his wife, Lavera Aiken, are shareholders of Lanny Aiken Insurance Agency, Inc., in Granbury, Texas. Since 1958, when Mr. Aiken entered the insurance business, he has represented more than 20 insurance companies and has signed more than 30 agency agreements. The first agreement for the Aiken agency to represent Commercial Union in selling only commercial insurance lines became effective July 1, 1982 and did not contain an arbitration clause. At that time, the Aiken agency was located in Fort Worth. The second agreement between the agency in Fort Worth and Commercial Union was signed only two months later on September 1, 1982 and did include an arbitration clause. The next agreement Mr. Aiken signed was in 1985 for his Fort Worth agency to represent Commercial Union for commercial lines. In 1986, after moving his agency to Granbury, Mr. Aiken signed another agreement for the agency to represent the insurer for personal lines. The 1985 and 1986 agreements did not contain an arbitration clause.

### The Arbitration Clause

The arbitration clause in the September 1, 1982 agency agreement states:

(18) *Arbitration. If any dispute or disagreement shall arise in connection with any interpretation of this agreement, its performance or non-performance,* or the figures and calculations used, *the parties shall make every effort to meet and settle their dispute in good faith informally.*

*If the parties cannot agree* on a written settlement to the dispute within fourteen (14) days after it arises, or within a longer period agreed upon by the parties, *then the matter in controversy shall be settled by arbitration, in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction.*

The parties may agree to submit the dispute to one arbitrator; otherwise there shall be three, one named in writing by each party within ten days after notice of arbitration is served by either party upon the other, and a third arbitrator selected by these two arbitrators within fifteen days thereafter. If the arbitrators are unable to agree upon a third arbitrator, then the third arbitrator shall be chosen impartially by the American Arbitration Association. The determination of the arbitrator(s) shall be final and binding on all parties, provided such determination is made in writing and signed by a majority of the arbitrator(s). Where arbitration results in an award, such award shall include interest in the amount of six percent (6%) per annum running from the date when the amount that is the subject of the award first became due. The costs of arbitration shall be borne equally by the parties. [Emphasis added].

On November 3, 1989, Commercial Union sent Mr. Aiken a letter about a proposed new agency agreement, including a synopsis of the proposed new terms, pointing out the fact that those terms would include an arbitration agreement. Mr. Aiken testified that he read the synopsis and saw the information about an arbitration clause. Eventually, he received the new agency agreement by mail and signed it on January 1, 1990. Although the agreement covered the Aiken agency's sales of both personal and commercial lines of insurance for Commercial Union, Mr. Aiken testified that he had read the synopsis of the contract but did not read the actual agreement before he signed it.

Approximately seven months later, on July 16, 1990, the agreement was amended again,

and the arbitration clause remained intact. The other changes made in the July amendment are not in controversy. The text of the July 16 arbitration clause is identical to the arbitration clauses of both the September 1, 1982 and January 1, 1990 agreements between the Aiken agency and Commercial Union. The appeal focuses on the July 16, 1990 agency agreement because it is the one that was in effect when this dispute arose.

## Scope of the Arbitration Clause

■ The first point of error asserts that the trial court erred by finding that the complaints made by the Aiken agency in this lawsuit are not within the scope of the agency agreement's arbitration clause. Whether the agreement imposes a duty to arbitrate this particular dispute is a matter of contract interpretation and a question of law for the court. *Kline v. O'Quinn*, 874 S.W.2d 776, 782 (Tex.App.—Houston [14th Dist.] 1994, writ denied), *cert. denied*, —— U.S. ——, 115 S.Ct. 2579, 132 L.Ed.2d 829 (1995). Any doubts regarding the scope of an arbitration agreement should be resolved in favor of arbitration. *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996) (orig. proceeding); *Merrill Lynch, Pierce, Fenner & Smith v. Eddings*, 838 S.W.2d 874, 880 (Tex. App.—Waco 1992, writ denied).

## Standard of Review

■ The Texas General Arbitration Act includes this statement:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

TEX.CIV.PRAC. & REM.CODE ANN. § 171.002 (Vernon Supp.1997). A trial court that is asked to evaluate the scope of a contract's arbitration clause may summarily decide whether to compel arbitration, based on affidavits, pleadings, discovery, and stipulations. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex.1992).

■ On appeal, we are asked to review whether the trial court's rulings as to scope and unconscionability were an abuse of discretion. Commercial Union asserts that the rulings were an abuse, and the Aikens say there was no abuse. We must decide whether the trial court's rulings were arbitrary and unreasonable, that is, made without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *Southwest Health Plan, Inc. v. Sparkman*, 921 S.W.2d 355, 357 (Tex.App.— Fort Worth 1996, no writ).

## Termination of the Agency Agreement

■ In June 1992, Commercial Union evaluated the losses it had experienced on claims filed by the holders of its insurance policies written through the Aiken agency and elected to terminate the Aiken agency's authority to write personal lines insurance under the July 16, 1990 agency agreement. The July 16, 1990 agreement includes this language:

20. Termination.

. . . .

(C) This agreement may be terminated by [Commercial Union] at any time upon written notice to agent stating when, not less than ninety (90) days after mailing of such notice, such cancellation shall become effective.

. . . .

(E) All termination procedures are subject to any statutory or regulatory requirements.

Mr. and Mrs. Aiken and their agency contend in this lawsuit that the method by which Commercial Union terminated the agency agreement violated a statutory requirement that before a fire and casualty insurer may terminate an agency agreement that has been in effect for a period of two years in Texas, the insurer must give the agency at least six-months' advance notice in writing. *See* TEX.INS.CODE ANN. art. 21.11–1 (Vernon 1981 & Supp.1997). While the Aikens are maintaining that Commercial Union did not comply with the statutory notice requirement, the insurer is contending that it did. The Aikens also assert that because the termination of the agency agreement caused the

insurers' cancellation of policies held by the agency's policyholders, the agency termination violated a statutory prohibition against canceling a homeowner's policy unless the insured had filed three or more claims under the policy within a three year period. *See id.* art. 21.49–2B § 7(c), (d) (Vernon Supp.1997). Determining which party enjoys the correct position on the agency's claims that there were statutory violations by Commercial Union is simply an evidentiary matter not ripe for our review in this appeal. However, the impasse between the parties about whether the insurers did or did not satisfy the contractual obligation to comply with statutory requirements raises the question of whether that impasse is a "dispute or disagreement" that the parties' own contract requires them to arbitrate because the dispute arose in connection the insurer's alleged nonperformance of the agency agreement. It is.

### The Agency's Tort Theories

■ The Aikens' third amended original petition also asserts tort claims. They allege that because the termination of the agency agreement resulted in cancellation of the outstanding insurance policies that were written while the agency agreement was in force, the policy cancellations amounted to defamation of the Aikens and their agency, interference with business relations between the agency and its policyholders, negligence, gross negligence, negligent misrepresentation, and intentional infliction of emotional distress. However, a party may not avoid the responsibility to arbitrate a contract dispute by attempting to cast complaints in tort rather than contract. *Merrill Lynch,* 838 S.W.2d at 880.

■ Here, the contract included the agreement to arbitrate *any dispute* arising in connection with nonperformance of the contract. And a dispute arising out of a contractual relationship may give rise to both breach of contract and tort claims at the same time because the breach of a duty owed under the contract may involve tortious conduct. *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (Tex.1947). But, if a defendant's negligent conduct would give rise to liability only because it breaches

the parties' agreement, then the claim sounds only in contract. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991); *Valero Energy Corp. v. Wagner & Brown II,* 777 S.W.2d 564, 566 (Tex.App.—El Paso 1989, writ denied). The Aikens' claims asserting tort liability are so interwoven with their contract claims that they do not stand alone, for the agency contract is the only basis for a legal relationship between the parties. In fact, in their brief the Aikens concede that their claims are within the scope of the arbitration clause.

Because we find that all of the claims asserted by the Aikens in this lawsuit are within the scope of the arbitration agreement, we hold that the trial court abused its discretion in finding to the contrary. The first point of error is sustained.

### Unconscionability

■ The second point of error asserts that the arbitration clause is not unconscionable and that the trial court erred in relying on unconscionability as the basis for denying the motion to compel arbitration and to stay the lawsuit. When a contract is between private persons who bargain from positions of substantially equal strength, the agreement is ordinarily enforced. *Interstate Fire Ins., Co. v. First Tape, Inc.,* 817 S.W.2d 142, 145 (Tex.App.—Houston [1st Dist.] 1991, writ denied). When deciding whether a contractual provision such as the arbitration clause is unconscionable, a court must consider the entire atmosphere in which the agreement was made. *DeLanney,* 809 S.W.2d at 498 (Gonzales, J., concurring). The court must look at the bargaining process the parties went through and must evaluate the fairness of a contractual provision in controversy by determining whether there are legitimate commercial reasons that justify its inclusion as part of the agreement. *Id.* at 499. Although unconscionability is a question of law, the trial court is entitled to hear evidence on the issue. *Wade v. Austin,* 524 S.W.2d 79, 85 (Tex.Civ.App.—Texarkana 1975, no writ).

The Aikens insist that the arbitration clause in their agency agreement is unconscionable because they had no bargaining power whatsoever in negotiating that agree-

ment and were forced to accept the arbitration clause, waiving their right of access to the courts, in order to preserve the economic viability of the agency and the interests of its policyholders. The Aikens contend that when they made their agency agreement with Commercial Union, there were no available alternatives for keeping their agency financially sound and also protecting the agency's 750 policyholders against being left without insurance coverage.

The Aikens offer that rationale for the argument that they suffered from a coercive atmosphere in the bargaining process between themselves and Commercial Union. The Aikens protest that during the bargaining process, the attitude of the Commercial Union personnel about the contract was simply "take it or leave it."

The Aikens cite *Wade*, 524 S.W.2d at 86, as authority for the premise that their present description of the bargaining atmosphere in which they negotiated the agency agreement compelled the trial court, and should now compel us, to determine that the contract's arbitration clause is oppressive, unreasonable, and unconscionable. A similar argument relying on unequal bargaining power of the contracting parties was rejected by the court in *Wade* when the real estate listing agreement before that court was found to not be unconscionable. *Id.* The *Wade* opinion also cautions that:

"[A] party who knowingly enters a lawful but improvident contract is not entitled to protection by the courts. 'In the absence of any mistake, fraud, or oppression, the courts, as such, are not interested in the wisdom or impolicy of contracts and agreements voluntarily entered into between parties compos mentis and sui juris. Such parties to contracts have the right to insert any stipulations that may be agreed to, provided they are neither unconscionable nor otherwise illegal or contrary to public policy. It has accordingly been said that, almost without limitation, what the parties agree upon is valid, the parties are bound by the agreement they have made, and the fact that a bargain is a hard one does not entitle a party to be relieved therefrom if he assumed it fairly and voluntarily...."

*Id.* at 86.

The courts of Texas view arbitration agreements with favor and have done so since at least 1845. *Jack B. Anglin Co., Inc.*, 842 S.W.2d at 268. There is nothing unconscionable per se about an arbitration contract, and the party claiming unconscionability has the burden to prove it. *Emerald Texas, Inc. v. Peel*, 920 S.W.2d 398, 402 (Tex.App.—Houston [1st Dist.] 1996, no writ). Here, the trial court appropriately heard evidence that is in the appellate record. After carefully reviewing the record, we are persuaded that the trial court erred by ruling that the arbitration clause is unconscionable and unenforceable as a matter of law.

The arbitration clause in the contract is plain and unambiguous. Its wording is identical to arbitration clauses that Mr. Aiken agreed to in the September 1, 1982 agency agreement and the January 1, 1990 agency agreement. He testified that he knew in advance that the July 16, 1990 agency agreement would include an arbitration clause, that he had read a synopsis of the agreement, that he thought he understood it, and that he signed the agreement. Mr. Aiken's admission from the witness stand that he had read and understood the synopsis conflicts with his contention that someone with Commercial Union fraudulently told him that the new agency agreement would not include an arbitration clause, thereby inducing him to sign the agreement without reading it. Contracting parties are obligated to protect themselves by reading what they sign. *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392, 393 (Tex.1982), *overruled on other grounds, Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 355 (Tex.1987) (regarding waiver of implied warranty in consumer goods cases). A person who signs a contract, is presumed as a matter of law to know its terms. *D. Wilson Constr. Co. v. McAllen Indep. Sch. Dist.*, 848 S.W.2d 226, 230 (Tex. App.—Corpus Christi 1992, writ dism'd w.o.j.).

This is not a disparate bargaining power case in which the insurer had vastly superior expertise and knowledge of agency agreements when compared with Mr. Aiken's knowledge. The evidence is clear that Mr. Aiken had 38 years of experience in the

**162**

insurance business and had been a party to more than 30 agency agreements during that time. He was a member of at least five professional insurance agent organizations or societies. He professed to be an expert consultant for other insurance agents in Texas on the subject of their agency agreements and actually served other agents in that expert capacity.

In a contractual bargaining process analogous to that in which the Aiken agency agreement was negotiated, a "take it or leave it" contract was held not unconscionable as a matter of law because the complaining party, a physician, could have contracted his services to another hospital. *See Dillee v. Sisters of Charity,* 912 S.W.2d 307, 310–11 (Tex. App.—Houston [14th Dist.] 1995, no writ). Although Mr. Aiken initially testified and contends on appeal that his agency had no alternative but to sign the Commercial Union agency agreement because he could not have moved his 750 policyholders to any other insurance company, other evidence refuted that contention. In March or April 1990, before he signed the July 16, 1990 agency agreement, Mr. Aiken rejected offers to sign agency agreements and do business through Kemper Insurance Company, Cigna Insurance Company, Transamerica Insurance Company, Continental Insurance Company, and Republic Insurance Company. We conclude from the evidence that the Aiken agency did have other alternatives for continuing to serve its policyholders.

As a matter of law, the arbitration clause in the Aiken agency agreement is fair to the contracting parties. There is no evidence that the clause contains unique or unusual provisions, and we recognize that the stated public policy of Texas is to encourage the peaceable resolution of disputes, even the early settlement of pending litigation, through voluntary settlement procedures, including arbitration. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 154.002, 154.003, 154.027 (Vernon Supp.1997); *Jack B. Anglin Co. Inc.,* 842 S.W.2d at 268. Because the arbitration clause is not unconscionable and because it appears to be a valid, enforceable, and irrevocable agreement between the parties, the second point of error is sustained.

The third point of error asserts that because no other grounds exist to support the trial court's order, the court erred in denying the motion to compel arbitration and stay the lawsuit. Based on our review of the record, we agree and sustain the third point of error.

### Conclusion

We have sustained all points of error, and because the errors complained of on appeal denied Commercial Union's rights to an extent reasonably calculated to cause, and probably did cause, rendition by the trial court of an improper order from which this appeal was taken, the order of the trial court is reversed. *See* Tex.R.App.P. 81(b)(1). We render judgment compelling arbitration and staying the cause pending arbitration. *See* Tex.R.App.P. 81(c).