GAF CORPORATION, Appellant,

v.

John I. BAMBER, et al., Appellees,

and

GAF Corporation, Appellant,

v.

Harold O. Daniels, et al, Appellees,

and

In re G.A.F. Corporation.

Nos. 09–00–131 CV, 09–00–132 CV, 09–00–150 CV, 09–00–151 CV and 09–00–153 CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 21, 2000.

Decided Oct. 26, 2000.

David B. Gaultney, Gene M. Williams, Mehaffy & Weber, Beaumont, for appellant.

Bryan O. Blevins, Jr., Brent W. Coon, Provost Umphrey, Beaumont, Lawrence Louis Germer, Germer, Bernsen & Getz, L.L.P., Beaumont, William F. Sheehan, Shea & Gardner, Washington, D.C., for appellee.

Before WALKER, C.J., BURGESS and HILL[1], JJ.

## OPINION

DON BURGESS, Justice.

GAF Corporation filed two interlocutory appeals (No. 09–00–131–CV and No. 09–00–132–CV), two notices of appeal (No. 09–00–150–CV and No. 09–00–151–CV), and a petition for writ of mandamus (No. 09–00–153–CV), all of which arise from orders entered by the 58th District Court. In an order signed March 7, 2000, Judge Mehaffy denied GAF's motion to compel arbitration and entered judgment against GAF, The next day, march 8, 2000, Judge Me-

---

1. The Honorable John Hill, sitting by assignment pursuant to TEX. GOV'T CODE ANN.

haffy entered a supplemental order directing GAF to pay all future allocated billings by the CCR under the Settlement Agreement, upon receipt. Subsequently, on March 24, 2000, Judge Mehaffy signed an order denying GAF's motion to stay litigation and compel arbitration. GAF complains of these orders.

We first note the parties agreed in oral argument this action is subject to the Federal Arbitration Act rather than the Texas General Arbitration Act. *See* 9 U.S.C. §§ 1–16 (the Federal Act); TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (Vernon 1997 and Supp.2000) (the Texas Act). In *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992), the Supreme Court noted that an order denying arbitration under the Texas Act is challenged by interlocutory appeal, while an order denying arbitration under the Federal Act must be contested by mandamus. As both sides agree the Texas Act does not apply to the instant cause, both interlocutory appeals (No. 09–00–131–CV and No. 09–00–132–CV) are dismissed for want of jurisdiction.

▮ An order denying arbitration under the Federal Act does not constitute a final judgment, so normally mandamus will lie. Here, the denial is coupled with a judgment. GAF admits the orders do not dispose of all claims between all parties, but only those issues between Plaintiffs and GAF. Appeals may be had only from final orders or judgments and a final judgment is one which disposes of *all legal issues* between *all parties. See Tipps,* 842 S.W.2d at 272 (citing *Hinde v. Hinde,* 701 S.W.2d 637, 639 (Tex.1986)). Accordingly, the orders of March 7 and 8 do not constitute a final judgment. Because the record does not reflect GAF obtained a severance in either cause, the appeals (No. 09–00–150–CV and No. 09–00–151–CV) are interlocutory and must be dismissed for want of jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (Vernon Supp.2000).

§ 74.003(b) (Vernon 1998).

■ Before us, therefore, is only the petition for writ of mandamus (No. 09–00–153–CV). The only issue we may consider is GAF's claim that the trial court erred in refusing to enforce the arbitration agreement. The Settlement Agreement provides, in pertinent part,

7. Payments to Plaintiff Counsel by the CCR under Paragraph 5 of this Settlement Agreement shall be funded by the CCR member companies in accordance with the terms of the Producer Agreement Concerning Center for Claims Resolution (as amended, effective February 1, 1994) and each CCR member company shall be liable under this Settlement Agreement only for its individual share of such payments as determined under that Producer Agreement. In the event that the CCR fails to make any of the payments pursuant to Paragraph 6 because any one of the CCR member companies fails to make timely payment of its individual share of such payment when such payment has become due in accordance with all of the terms of this Settlement Agreement (a "Default"), Plaintiff Counsel shall have, with respect to any and all Plaintiffs whose claims have not been paid in full by the CCR under this Agreement as of the date of the Default, the option of either (a) continuing the settlement as to the non-Defaulting CCR member companies; or (b) declaring this Settlement Agreement null and void as against all CCR member companies. If Plaintiff Counsel elects to declare this Settlement Agreement null and void as against all CCR member companies, that election must be made by providing written notice to the CCR of their decision to do so within thirty (30) days of notice to that Counsel of any CCR member company's failure to make timely payment of its share of any payment due under Paragraph 6; and in such event, Plaintiffs that opt to bring suit in the tort system against any CCR member company shall have one year from the date of such written notice of termination to file their claims in

the tort system, unless the applicable law provides for a longer period of time. If Plaintiff Counsel elects to continue the settlement as to the non-defaulting CCR member companies, then as to the defaulting CCR member only, any and all plaintiffs whose claims have not been paid in full by the CCR under this Agreement shall have the option of (a) electing to enforce the Defaulting CCR member company's obligations under this Settlement Agreement or (b) electing to pursue such plaintiffs claims for asbestos-related personal injury against the Defaulting CCR member company in the tort system; and such Plaintiffs shall have one year from the date of the Notice of Default to file their claims in the tort system, against the defaulting CCR member company, unless the applicable law provides for a longer period of time.

. . . .

12. It is agreed that the parties will make good faith efforts to resolve any disputes that may arise while carrying out the terms and conditions of this Agreement. If the parties are unable to resolve a dispute, the issue shall be referred to a mutually agreeable arbitrator for binding resolution. If the parties are unable to mutually agree upon an arbitrator, then each party shall select one arbitrator, and the two arbitrators so selected shall select a third arbitrator. All disputes shall then be resolved by a majority vote of the three arbitrators. The decision of the mutually agreeable arbitrator, or of the majority of the three arbitrators, shall be final and binding upon the parties. The costs of the arbitration (including the arbitrator's or arbitrators' fees and expenses) shall be borne equally by the parties (unless otherwise directed by the arbitrator in his or her opinion resolving the matter or by agreement of the parties), and each party shall bear its own attorneys' fees.

When considering the construction of a contract, we must first determine if the contract is ambiguous. If the contract language can be given a certain or definite meaning, it is not ambiguous and we are obligated to interpret the contract as a matter of law. *See DeWitt County Elec. Co-op., Inc. v. Parks,* 1 S.W.3d 96, 100 (Tex.1999). An ambiguity does not arise merely because parties to an agreement advance differing interpretations. *See Lopez v. Munoz, Hockema & Reed,* 22 S.W.3d 857, 861 (Tex.2000). Rather, an ambiguity exists only after the application of established rules of construction leaves an agreement susceptible to more than one meaning. *See Parks,* 1 S.W.3d at 100. Furthermore, both possible meanings must be reasonable. *See Lopez,* 22 S.W.3d at 861.

Here, the contract language can be given a definite legal meaning and is not reasonably susceptible to more than one meaning. Thus, it is unambiguous and is to be construed as a matter of law. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983).

■ We first note that in harmonizing provisions, "terms stated earlier in an agreement must be favored over subsequent terms." *Coker,* 650 S.W.2d at 393. Paragraph 7, which permits the enforcement action initiated by Plaintiffs, precedes the arbitration provision of paragraph 12.

■ Next, we observe that the agreement must be considered as a whole. *See Provident American Ins. Co. v. Castaneda,* 988 S.W.2d 189, 210 (Tex.1998). We must try to give effect to all contract provisions so that none will be rendered meaningless. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). We consider each part with every other part and presume the parties intend every clause to have some effect. *See Rampart Capital Corp. v. Egmont Corp.,* 18 S.W.3d 318, 322 (Tex.App.—Beaumont 2000, no pet.). And we strive to give meaning to every clause to avoid ren-

dering any portion meaningless. *See Balandran v. Safeco Ins. Co. of America,* 972 S.W.2d 738, 741 (Tex.1998).

GAF contends that paragraph 12 controls this dispute, even though paragraph 7 explicitly provides remedies for a dispute exactly like this one. GAF's interpretation renders paragraph 7 entirely meaningless.

■ Additionally, "[i]t is a well established rule of construction that the specific language of an instrument controls over its general terms." *O'Connor v. O'Connor,* 694 S.W.2d 152, 155 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). *See also Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133–34 (Tex.1994). Paragraph 7 provides Plaintiffs specific remedies for a very specific dispute. Paragraph 12, on the other hand, is a general provision of a remedy for undefined disputes.

In accordance with the rules of contract construction, it is clear the arbitration provision does not take precedence over the provision for Plaintiffs' remedies when a settling company fails to make payment. We therefore find the trial court did not abuse its discretion in denying GAF's motion to stay litigation and compel arbitration. Issue one is overruled.

GAF's remaining issues complain of the judgment and, as held above, we lack jurisdiction to consider those complaints. Therefore, GAF's interlocutory appeals are DISMISSED FOR WANT OF JURISDICTION; GAF's appeals are DISMISSED FOR WANT OF JURISDICTION, and GAF's petition for writ of mandamus is DENIED.

JOHN HILL, Justice (Assigned), dissenting.

I respectfully dissent, because the trial court abused its discretion by not referring this dispute to arbitration in accordance with the arbitration clause of the Settlement Agreement.

The real parties in interest sought to enforce their claims against GAF, claims

that arose while carrying out the terms and conditions of the Settlement Agreement. As noted by the majority, the Settlement Agreement contains an arbitration provision that applies to "any disputes that may arise while carrying out the terms and conditions of this Agreement."

The majority recognizes that this action is subject to the Federal Arbitration Act. *See* 9 U.S.C. §§ 1–16. Once a party seeking to compel arbitration establishes that an agreement exists under the FAA, and that the claims raised are within the agreement's scope, the trial court has no discretion but to compel arbitration and stay its proceedings pending arbitration. *See Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996) (orig.proceeding). A presumption exists in favor of agreements to arbitrate under the FAA and courts must resolve any doubts about an agreement to arbitrate in favor of arbitration. *Id.* Whether this agreement imposes a duty to arbitrate this particular dispute is a matter of contract interpretation and a question of law for the court. *See American Employers' Ins. Co. v. Aiken,* 942 S.W.2d 156, 159 (Tex.App.—Fort Worth 1997, no writ). We must decide whether the trial court's rulings were arbitrary and unreasonable, i.e., made without reference to any guiding rules or principles. *Id.*

The dispute between the parties in this action involves whether GAF is required to pay the real parties in interest when the Center for Claims Resolution has assessed its share due to the claimants, or whether it is not required to pay its share until its dispute with the Center over the amount of the assessment has been arbitrated in accordance with the Producers Agreement, the agreement among the several entities that make up the Center. This dispute arose while carrying out the terms and conditions of the Settlement Agreement. The majority makes no contention that it did not. Therefore, because the arbitration provision of the Settlement Agreement is applicable to any dispute that may

arise while carrying out the terms and conditions of the agreement, the dispute is within the scope of the arbitration clause. *Id.* at 160. Consequently, the trial court abused its discretion by not submitting this dispute to arbitration as required by the Settlement Agreement. *Id.*

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). Courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* If paragraph 7 and paragraph 12 are not in conflict, then the arbitration clause in paragraph 12 must be applicable because it applies to any dispute that may arise while carrying out the terms and conditions of the agreement.

Despite the fact that paragraph 12 by its terms is applicable to this dispute, the majority declines to apply it, asserting that paragraph 7 contains an alternative procedure for the enforcement of a claim against one of the Center's member companies when it is in default for not paying its assessment. Basically, paragraph 7 provides two options for Plaintiffs' attorneys when a Center member company is in default in paying an assessment pursuant to the Producers Agreement. In the first option, the Plaintiffs' attorney may either continue the settlement as to the non-defaulting companies or declare the Settlement Agreement void as to all of the member companies. In this case, counsel for the real parties in interest opted to continue the settlement as to the non-defaulting companies. That being the case, counsel for the real parties in interest had a second option, the option to elect to enforce the defaulting company's obligation under the Settlement Agreement, or to pursue its claim against that company in the tort system. Counsel chose the option of electing to enforce the defaulting company's obligation under the Settlement Agree-

ment. In order to do so, it must proceed through arbitration as required by the agreement.

The majority concludes that the application of section 12 to this dispute in accordance with its terms would render paragraph 7 meaningless. In reaching this conclusion, the majority must have adopted the argument made by the real parties in interest that the Settlement Agreement did not intend for paragraph 12 to be applicable to disputes discussed in paragraph 7 because claims cannot be enforced through arbitration. I disagree with that conclusion. In the case of *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 50, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the United States Supreme Court spoke of a party alleging racial discrimination as being able to enforce his claim through arbitration under a collective bargaining agreement or through federal district court under Title VII. The Settlement Agreement in this case, entered into in 1999, provides that payments under the Settlement Agreement are to be funded by the Center's member companies under the terms of the Producers Agreement, as amended in 1994. It is reasonable to infer, then, that the parties to the Settlement Agreement were familiar with the terms of the Producers Agreement. That agreement provides, in Section XIV, paragraph 4, for the enforcement of payments of a member company's obligations under the agreement through ADR, which appears to be arbitration. It is also true that arbitral awards are enforceable through the courts. *See* 9 U.S.C. § 13. Therefore, use of the terminology of enforcing a claim does not preclude the use of arbitration, and is not in conflict with the contract's provision requiring arbitration in any dispute arising while carrying out the terms and conditions of the Settlement Agreement.

The real party in interest, in making its argument that claims are not enforced through arbitration, relies upon 9 U.S.C. § 13. This is a portion of the FAA relating to the enforcement of an arbitral award in federal court. While it is true that an arbitration award is not self-enforcing, I believe that the authority I have set forth indicates that in common usage claims may be said to be enforced through arbitration. Consequently, there is no inconsistency between paragraph 7 and paragraph 12. Therefore, this construction of the Settlement Agreement does not render paragraph 7 meaningless. If one continues to enforce a claim under the Settlement Agreement where one alleges that one of the member companies is in default, one has the option to pursue the claim under the Settlement Agreement, and therefore through arbitration, or to proceed under the tort system. This is a reasonable interpretation of the agreement.

I agree with the majority that the Settlement Agreement is unambiguous. I believe that it unambiguously requires that any dispute that arises while carrying out the terms and conditions of the agreement is to be submitted to arbitration, and that, because this is such a dispute, it must be submitted to arbitration. In the event that the Settlement Agreement may be reasonably construed to preclude arbitration of such a dispute, despite the fact that the arbitration provision specifically refers to "any dispute," I submit that the agreement is ambiguous. As previously noted, we must resolve any doubt about an agreement to arbitrate in favor of arbitration. Therefore, if the agreement is ambiguous, the trial court abused its discretion by not resolving the ambiguity in favor of arbitration. I would conditionally grant the writ of mandamus.