# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00559-CV

### Matl Construction Company f/k/a Stewart-Matl, Ltd.; and Travelers Casualty and Surety Company of America, Appellants

**v.**

### Jim Connelly Masonry, Inc., Appellee

## FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT NO. 26,611, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Matl Construction Company f/k/a Stewart-Matl, Ltd. ("Matl"), and its surety, Travelers Casualty and Surety Company of America (collectively, "appellants") appeal an interlocutory district court order denying their motion to compel arbitration of claims asserted against them by Jim Connelly Masonry, Inc. ("JCM"). *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1) (West 2005).[1] In three issues, appellants contend that the district court was required

---

[1] Under the Texas General Arbitration Act (TAA), a party may challenge an order denying arbitration through interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1) (West 2005). Under the Federal Arbitration Act (FAA), by contrast, a party can seek relief from denial of arbitration solely through mandamus. *In re Poly-America, L.P.*, 262 S.W.3d 337, 345 (Tex. 2008) (orig. proceeding). Appellants have sought relief from the district court's order solely through this interlocutory appeal. This choice of appellate remedy presumes that the TAA governs the arbitrability of JCM's claims. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 778-80 (Tex. 2006); *but see* Act of May 27, 2009, 81st Leg., ch. __, § ___, R.S., 2009 Tex. Gen. Laws ___ (effective Sept. 1, 2009). The FAA and TAA are not mutually exclusive; if FAA applies, that does not necessarily mean that the TAA does not. *D. Wilson Constr. Co.*, 196 S.W.3d at 779-80.

to compel arbitration because a valid arbitration agreement exists that encompasses JCM's claims. We agree, and will reverse the district court's order and remand for further proceedings consistent with this opinion.

Matl was the general contractor for the Bastrop County Law Enforcement Center Addition Project. JCM was selected by Matl to install all masonry work on the project. Disputes arose, and JCM eventually sued Matl and Travelers, Matl's surety, on its performance bond. JCM sought recovery from Matl of $271,508.18, which it alleged to be the value of labor, equipment, and materials it had furnished on the project and for which it had not been compensated. In seeking this recovery, JCM pleaded theories of "oral contract" and quantum meruit. JCM also asserted a claim against Matl for conversion, alleging that when Matl gave notice "that it was terminating the Subcontract," it ordered JCM off the job site and "did in fact deny [JCM] entry onto the Project to remove equipment owned by Plaintiff on the Project." JCM also asserted a claim against Matl and Travelers, jointly and severally, on the performance bond.

Appellants moved to compel arbitration based on an arbitration clause contained in what they asserted was a written subcontract with JCM. An evidentiary hearing was held, after

The FAA preempts the TAA only to the extent the TAA is inconsistent with it. *Id.* To determine whether the TAA is contrary to the FAA in a particular case, the court considers a four-factor test: the FAA preempts the TAA only if: "(1) the agreement is in writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under traditional contract defenses [under state law], and (4) state law affects the enforceability of the agreement." *Id.* (quoting *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (per curiam)). Here, no party has contended that the TAA is preempted by the FAA or is otherwise inapplicable. *See id.* We conclude that we have subject-matter jurisdiction over this appeal.

which the district court took the matter under advisement and ultimately denied appellants' motion. This appeal followed.

As the parties seeking to compel arbitration, appellants had the initial burden of establishing (1) the existence of a valid arbitration agreement; (2) that encompasses JCM's claims. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999); Tex. Civ. Prac. & Rem. Code Ann. § 171.021 (West 2005). Whether a valid arbitration agreement exists is a function of state contract law. *See J. M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

In their first two issues, appellants contend that the record establishes, as a matter of law, that a valid arbitration agreement exists. The material facts bearing upon this determination are undisputed. Before JCM began work on the project, Matl sent JCM a document titled "Subcontract." The Subcontract provides that, effective March 31, 2006, JCM agreed to perform masonry work on the project in "strict accordance with the Plans and Specifications, Addenda and Revisions and the Drawings and Details dated November, 2005." In exchange, it was agreed that JCM would be paid the total sum of $475,017, subject to additions and deductions permitted elsewhere in the Subcontract. The Subcontract also includes five attachments: "Subcontractor General Conditions" (Ex. A), "Subcontractor Special Conditions" (Ex. B), an "Application for Payment" form for JCM's use in requesting payment from Matl as its work was completed (Ex. C), "Jobsite Safety Requirements" (Ex. D), and Matl's sales and use tax exemption certification for the masonry (Ex. E). Paragraph 23 of the thirty-nine paragraph Subcontractor General Conditions (Ex. A) provides:

> **23.** <u>**MEDIATION AND ARBITRATION:**</u> If a dispute arises out of or relates to this Contract, or the breach thereof, and if said dispute cannot be settled through

negotiation, at the election of Stewart-Matl,[2] the parties agree first to try in good faith to settle the dispute by mediation under the Commercial Mediation Rules of the American Arbitration Association, before resorting to arbitration, litigation or some other dispute resolution procedure as provided herein.

If mediation has proven unsuccessful in resolving the dispute, then, upon the demand of Stewart-Matl, whether made before or after the institution of any judicial proceeding, any controversy or claim whatsoever arising out of or relating to this Contract, or the breach thereof, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitration(s) may be entered in any court having jurisdiction thereof.

The Subcontract contains two sets of signature lines, one for a representative of JCM, and the other for a representative of Matl. When Matl sent the proposed Subcontract to JCM, both sets of signature lines were left blank.

On May 1, 2006, Jim Connelly, JCM's president, signed the Subcontract on JCM's behalf[3]—with the notation, "w/ attachment"—and returned the document to Matl. With the copy of the Subcontract JCM transmitted back to Matl, it included a one-page document on JCM letterhead (the "Attachment"), which stated:

Thank you for the opportunity to work with you on the Bastrop County Law Enforcement project. Before we start, there are a few items we want to get clear:

Jim Connelly Masonry, Inc. promises:

-Firm pricing for thirty days after submission of our bid, using unit pricing.
-To honor our contract for sixty days if the starting date is delayed.
-Daily removal of debris to your on-site dumpster.

---

[2] As the company was then known.

[3] Connelly testified, without dispute, that he had sole authority to execute contracts on JCM's behalf.

4

-To stick with your reasonable schedule.

-To replace or repair any deficiencies in the work within 72 hours of written notification by you or your representative.

-Prompt response to change orders and field directives submitted in writing and signed by you or your representative.

-Excellent work by skilled, enthusiastic employees and subcontractors, warranted for one year from substantial completion.

-That if unresolvable disputes should occur between us, we will go to a professional mediator with you.

Stewart-Matl promises to:

-Give our crew unrestricted access to the site so they can do their work.

-Have parking, utilities (water, electricity, porta-can), dumpster for debris disposal, storage and staging place available on-site.

-Give us two sets of plans and one spec. book.

-Have all the necessary bonds and permits for the project and a builder's risk policy.

-Clearly indicate control points and lines of layout.

-Give us change orders and field directives in writing so that everyone can be clear about what you want us to do.

-Give us 72 hours to fix any problems with the work before you go out and hire someone else to do it.

-Pay us for work we've satisfactorily completed and materials delivered no matter what. (After all, we are a business).

-Pay us for re-staging if our crew is required to leave the project due to your scheduling reasons.

-Pay us within 45 days of the scheduled invoice date, or to pay an extra 1.5% per month interest on any outstanding balance plus the cost of collection after that.

-Allow us to take all our vehicles, equipment and supplies with us when we leave.

-Show us in writing how you figured any back charges. (You can include overhead, but no more than 10%).

-Go to a mutually agreed-upon professional mediator in the county in which the job is located with us if unresolvable disputes should occur. Of course, if we all keep our promises that will never be necessary.

Some of the Attachment's terms are inconsistent with terms in the Subcontract. Below these terms is stated, "Please sign and attach to the contract," followed by signature lines for Matl and JCM.

Connelly did not sign the Attachment before transmitting it to Matl.

5

On May 17, Daniel Matl, Matl's project manager, signed the returned Subcontract as Matl's representative. No representative of Matl signed or otherwise acknowledged the Attachment. Nor did any Matl representative communicate any disagreement with or disapproval of the Attachment to JCM before signing the Subcontract.

Through Travelers, Matl executed payment and performance bonds to guarantee payment of claimants supplying labor and materials to the project. *See* Tex. Gov't Code Ann. § 2253.021 (West 2008). The bonds incorporated by reference all provisions of the general construction contract between Matl and the project owner, Bastrop County.

Thereafter, JCM began work on the project. JCM purported to follow the "Plans and Specifications" required in the Subcontract and repeatedly utilized the "Application for Payment" form attached as Ex. C. to the Subcontract when requesting payment for its work. Matl made payments to JCM for its work. As work proceeded, JCM repeatedly asserted rights under what it termed its "contract," "written contract," or "subcontract" with Matl, although the rights it claimed were found both in the Subcontract and in the Attachment. JCM claimed a right to 72 hours' notice to correct any problems with its work—a right found only in its Attachment. In early March 2007, JCM's prior counsel sent two letters on its behalf to Matl, Bastrop County, and Travelers asserting claims to payments JCM alleged were owed under its "written contract" and "subcontract" with Matl for "materials and labor . . . provided to Stewart-Matl, Ltd., under the terms of the contract" in January and February 2007.[4] Enclosed with both letters was a copy of the Subcontract and a sworn

---

[4] The letter stated that JCM was owed $88,450.72 for labor and materials it provided in January and $130,294.09 for February.

6

account affidavit signed by Connelly. Subsequently, on April 17, 2007, JCM—now represented by their present counsel—wrote Matl's counsel demanding payment for work performed between December 2006 and March 2007.[5] JCM complained that the non-payment "constitutes a material breach of the subcontract between [JCM] and [Matl] pertaining to the Project." In addition, JCM asserted that Matl "has breached its subcontract with [JCM] pertaining to the Project" by, among other things, failing to provide it 72 hours' notice relating to any alleged defective work, providing field directives that were not in writing, and failing to provide it two sets of plans—terms in the Attachment. Furthermore, on July 15, 2007, JCM sent written notice to Travelers, Matl, and Bastrop County of a claim on Matl's payment bond. *See* Tex. Gov't Code Ann. § 2253.041 (West 2008). The notice, signed by Connelly, stated that JCM "entered into a contract with [Matl] to furnish masonry labor and materials" on the project in the total amount of $484,576.90, including approved change orders, and that a total of $216,222.27 was due and owing as of May 2007. The notice was accompanied by a "sworn statement of account" signed by Connelly that also referenced JCM's "contract" with Matl in the total amount of $484,576.90, as well as a copy of the Subcontract and a version of the Attachment that did not include the signature lines.

Matl has taken the position in litigation that the contract consists solely of the Subcontract and does not include JCM's Attachment. Contrary to its previous actions, JCM, responding to Matl's assertions, took the position before the district court that no contract had ever been formed. Under JCM's theory, Connelly, by signing the Subcontract "w/attachment," rejected the Subcontract as written and made a counter-offer consisting of the Subcontract as modified by

---

[5] The letter referenced a figure of $135,000.

7

the Attachment. Because Matl claimed that it had never accepted the Attachment, JCM reasoned, no contract had ever been formed. This argument apparently persuaded the district court to deny appellants' motion to compel arbitration.

As the parties' positions have been refined through appellate briefing and argument, however, there is no dispute that JCM and Matl did form a contract that governed their respective rights regarding JCM's work on the project. The terms of that contract, based on the undisputed evidence of the parties' conduct, necessarily include the Subcontract but might or might not include the modifications in JCM's attachment. To establish the existence of an enforceable contract, a party must prove (1) an offer, (2) acceptance of the offer, (3) mutual assent or "meeting of the minds" regarding the subject matter and essential terms of the contract, and (4) consideration, or mutuality of obligations. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007); *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 392 (Tex. App.—Amarillo, no pet.) (*citing Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408-09 (Tex. 1997)). In determining whether the parties have formed a contract through offer, acceptance, and mutual assent to the contract terms, we rely on "the objective standard of what the parties said and how they acted, not on their subjective state of mind." *Texas Disposal Sys. Landfill, Inc. v. Waste Mgt. Holdings, Inc.*, 219 S.W.3d 563, 589 (Tex. App.—Austin 2007, pet. denied); *see* Restatement (Second) of Contracts § 24 (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) ("As with any other contract, the parties' intent is governed by what they said, not by what they intended to say but did not."). The parties'

conduct objectively manifested mutual assent to the subject matter and essential terms of the Subcontract—JCM would provide masonry materials and labor on the project, strictly comply with the project's "Terms and Conditions," in exchange for payment from Matl. JCM repeatedly invoked rights under the Subcontract and even utilized the Subcontract's "Application for Payment" form.[6]

Although the parties differ with regard to whether the contract incorporates the Attachment, under either view their contract includes the arbitration provision that Matl seeks to enforce. Although differing from some terms of the Subcontract, JCM's Attachment, significantly, did not seek to modify the Subcontract's arbitration provision. Consequently, even if JCM's response to the Subcontract was a "counter-offer" that was accepted through Matl's performance,[7] the parties would have formed a contract that included the same arbitration provision contained in Matl's original offer.

We conclude that, as a matter of law, a valid arbitration agreement exists. We sustain appellants' first and second issues.

In their third issue, appellants contend that the arbitration provision encompasses JCM's claims. Once it is determined that a valid arbitration agreement exists, there is a strong presumption in favor of arbitration, and we are to resolve all doubts in favor of finding coverage. *In re D. Wilson Constr. Co.*, 196 S.W.3d at 782-83. Here, the arbitration provision is broad: it encompasses "any controversy or claim whatsoever arising out of or relating to this Contract, or

---

[6] Connelly, in fact, testified that he and JCM had operated under the subjective understanding that the parties had formed a written contract consisting of the Subcontract as modified by the Attachment.

[7] Daniel Matl, who signed the Subcontract on Matl's behalf after JCM returned it, testified that he lacked authority to accept the terms of the Attachment.

9

the breach thereof." JCM, in fact, does not argue that its claims fall outside this language; it suggests only that the district court never reached that issue.

Whether a claim falls within the scope of an arbitration agreement is determined by the substance of the complaint and not necessarily by the legal causes of action asserted. *Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998) (Texas law); *In re First Merit Bank*, 52 S.W.3d 749, 754 (Tex. 2001); *American Employers' Ins. Co. v. Aiken*, 942 S.W.2d 156, 159 (Tex. App.—Fort Worth 1997, no pet.). Whether a tort claim "relates to" a contract depends on whether the claim could be maintained without reference to the contract, not simply whether the complaint references the contract. *Ford*, 141 F.3d at 251 (citing *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380 (Tex. App.—Houston [14th Dist.] 1993, writ denied)).

JCM seeks the recovery of $271,508.18, which it alleges to be the value of labor, equipment, and materials it had furnished on the project and not been compensated for, as well as damages for conversion of its equipment and payment of the performance bond. Although JCM's pleadings of these claims do not all explicitly refer to the contract, the claims nonetheless "relate to" and cannot be maintained without reference to the parties' respective rights and duties under the contract, including JCM's rights to payment, the work required of it, and its rights to enter the job site and recover its equipment upon termination. Especially given the strong presumption in favor of arbitration, we find the terms of the arbitration agreement, which cover "any controversy or claim whatsoever arising out of or relating to this Contract," are sufficiently broad to encompass

JCM's claims. *See id.*, at 250; *In re D. Wilson Constr. Co.*, 196 S.W.3d at 782-83; *In re First Merit Bank*, 52 S.W.3d at 754.

JCM further argues that, even if it is bound to the contractual arbitration provision as to Matl, it cannot be similarly bound as to Travelers because Travelers was not a party to the contract. However, if, as we have found, JCM and Matl are subject to the arbitration provision, Travelers is, likewise, subject to the provision. *See In re U.S. Home Corp.*, 236 S.W.3d 761, 765 (Tex. 2007); *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305-08 (Tex. 2006). JCM's claims against Matl for payment turn on Matl's duties under the contract, and the same is true of its claims against Travelers under the payment bond that secures Matl's obligations. JCM cannot, on the one hand, seek to recover from Travelers based on its contractual rights to payment while, on the other hand, deny that it is bound by the arbitration agreement contained in that contract. *See Meyer*, 211 S.W.3d at 305-06. Quoting the Fifth Circuit in *MS Dealer Serv. Corp. v. Franklin*, the supreme court in *Meyer* explained:

> [E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Id.* (quoting 210 F.3d 524, 527 (5th Cir.), cert. denied, 531 U.S. 1013 (2000)); *see also In re U.S. Home Corp.*, 236 S.W.3d at 765 ("As the nonsignatories' liability arises from and must be determined by reference to the parties' contract rather than general obligations imposed by law, the suit is subject to the contract's arbitration provisions.") Travelers, like Matl, is subject to the terms

11

of the arbitration provision. We conclude that appellants have established that the arbitration agreement encompasses all of JCM's claims. We sustain appellants' third issue.

Having concluded that appellants have, as a matter of law, met their burden of establishing a valid arbitration agreement, the district court was required to compel arbitration unless JCM pleaded and proved an affirmative defense to the arbitration provision. *See Oakwood*, 987 S.W.2d at 573. JCM did not attempt to do so. Consequently, we must reverse the district court's order denying appellants' motion to compel arbitration and remand the case to the trial court for further proceedings consistent with this opinion.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop;
   Dissenting Opinion by Justice Patterson

Reversed and Remanded

Filed:  July 31, 2009