COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-06-019-CV

 

 

D=LUX MOVERS & STORAGE                                                 APPELLANT

 

                                                   V.

 

DANIEL FULTON AND BETSY
FULTON                                     APPELLEES

 

                                              ------------

 

            FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

MEMORANDUM OPINION[1]

 

------------

 

 I. 
Introduction

 








In this
fraud and breach of contract case, D=Lux
Movers & Storage appeals the trial court=s
judgment awarding Daniel Fulton and Betsy Fulton $1,640 in damages and $12,000
in attorney=s fees.  In issues one, two, and four, D=Lux
argues that the evidence is legally and factually insufficient to establish the
award of $1,640 in damages, to show that D=Lux=s
actions caused the Fultons=
damages, and to establish that the attorney=s fees
awarded were reasonable.  In its third
issue, D=Lux
contends that the trial court lacked subject matter jurisdiction because the
uncontroverted evidence established damages at less than $200.  We affirm in part and reverse and render in
part.

II.  Background

The
Fultons entered into a moving services contract with D=Lux for
the shipment of their household goods. 
In the contract, D=Lux agreed to crate and uncrate
two of the Fultons= glass table tops for a total
charge of $540.  D=Lux,
however, failed to crate the two table tops as agreed, and the movers broke one
of the table tops when unloading it. 








The
Fultons sued D=Lux for breach of contract,
fraud, violations of the Deceptive Trade Practices Act, and negligent
misrepresentation.  D=Lux
denied the Fultons= assertions, pleaded that the
limitation of liability clause in the contract applied, and requested attorney=s fees
under section 38.001 of the civil practice and remedies code.  After a bench trial, the trial court rendered
judgment for the Fultons on their breach of contract and fraud claims and awarded
the Fultons $1,640 in actual damages and $12,000 in attorneys=
fees.  The trial court filed findings of
fact and conclusions of law.  This appeal
followed.   

III.  Damages

In its
first issue, D=Lux argues that the evidence is
legally and factually insufficient to support the trial court=s award
of damages in the amount of $1,640, which represents the replacement value of
the broken table top plus the amount the Fultons paid for crating they did not
receive, and that the breach of contract damages are limited to $180 under a
limitation of liability clause in the moving contract. 

A.
Standard of Review 








Findings of fact
have the same force and dignity as a jury=s answers to jury
questions and are reviewable for legal and factual sufficiency of the evidence
under the same standards applied to jury answers.[2]  A legal sufficiency challenge may only be
sustained when:  (1) the record discloses
a complete absence of evidence of a vital fact; (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact; (3) the evidence offered to prove a vital fact is no more
than a mere scintilla; or (4) the evidence establishes conclusively the
opposite of a vital fact.[3]  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could, and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.[4]


An
assertion that the evidence is factually insufficient to support a fact finding
means that the evidence supporting the finding is so weak or the evidence to
the contrary is so overwhelming that the answer should be set aside and a new
trial ordered.[5]  We are required to consider all of the
evidence in the case in making this determination, not just the evidence that
supports the finding.[6]


B.  Limitation of Liability 








The
trial court awarded the Fultons Aspecial
damages in the amount of $1640A based
on its findings that the Fultons Asuffered
special damages in the amount of $1,100.00 for the replacement of the shattered
tabletop and were fraudulently charged $540 for the crating that was not
performed.@ D=Lux
asserts that if the moving contract was breached, the Fultons= damages
are limited to $180 under the contract=s
limitation of liability clause.  

The
contract contains the following limitation of liability clause:

A HOUSEHOLD GOODS
CARRIERS LIABILITY FOR LOSS OR DAMAGE TO ANY SHIPMENT IS $.60 PER POUND PER
ARTICLE, UNLESS THE CARRIER AND SHIPPER AGREE IN WRITING TO A GREATER LEVEL
OF LIABILITY.  THIS IS NOT
INSURANCE.  

 

By
executing the contract containing this limitation of liability clause, the
Fultons agreed to limit D=Lux=s
liability for loss or damage to their table top to $.60 per pound.  Therefore, based on the trial court=s
finding that the table top weighed 500 pounds, the Fultons are entitled to no
more than $300 for the damage to their table top.[7]








The
limitation of liability provision, however, only limits D=Lux=s
liability for damage or loss to the Fultons= goods;
it does not purport to limit D=Lux=s
liability for breach of the contract by nonperformance.[8]  A nonbreaching party is entitled to recover
as damages money that he invested in performing the contract in reliance that
the contract would be performed.[9]  

Here,
the evidence supports the trial court=s
findings that D=Lux charged the Fultons $540 for
crating and uncrating the table tops and that D=Lux
failed to crate the table tops as required under the contract.  Daniel Fulton testified that he paid $540 for
the crating he did not receive. 
Moreover, Kevin Topper, D=Lux=s
general manager, testified that the Fultons paid $540 for the crating service
and that D=Lux did not crate the table
tops.  Therefore, the Fultons are
entitled to recover from D=Lux the
$540 that they paid for crating services that D=Lux did
not perform.

C.
Contract Versus Tort

The
Fultons contend that their cause of action against D=Lux
sounds in tort and, therefore, the limitation of liability clause does not
apply.  According to the Fultons, D=Lux=s
promise to crate the table tops fraudulently induced them to forego purchasing
insurance to insure the table tops.








In Southwestern Bell
Telephone Co. v. DeLanney,[10]
the Supreme Court of Texas held,

If the defendant=s
conduct . . . would give rise to liability independent of the fact that a
contract exists between the parties, the plaintiff=s claim
may also sound in tort.  Conversely, if
the defendant=s conduct . . . would give rise
to liability only because it breaches the parties=
agreement, the plaintiff=s claim ordinarily sounds only
in contract. . . . When the only loss or damage is to the subject matter of the
contract, the plaintiff=s action is ordinarily on the
contract.[11]









The
Fultons= Afraud@ claim
hangs entirely on the existence of the moving contract.  D=Lux=s
conduct in failing to crate the table tops, as it agreed,  would not give rise to liability independent
of the contract.  Instead, D=Lux=s
conduct gives rise to liability only because it breached its agreement.  Therefore, the Fultons= claim
sounds only in contract.  D=Lux=s
agreement to crate the table tops may have induced the Fultons to forego buying
insurance, but it did not induce them to enter into the moving contract.  Accordingly, the Fultons cannot recover tort
damages in this case because D=Lux=s
conduct does not give rise to liability independent of the fact that a contract
exists between the parties.[12]

D.  Unconscionability 

The
Fultons assert that the limitation of liability clause is unconscionable,
against public policy, and unenforceable. 
In determining whether a limitation of liability clause is
unconscionable or against public policy, courts generally consider the entire
atmosphere in which the agreement was made, the bargaining process the parties
went through, and whether there is such a disparity in bargaining power between
the parties that one party is forced to agree to the exculpatory provision.[13]  Courts also evaluate the fairness of the
contractual provision by determining whether there are legitimate commercial
reasons that justify its inclusion in the agreement.[14]  If a clause is not unconscionable, it is
immaterial whether the limitation of liability is a reasonable estimate of probable
damages resulting from a breach.[15]








In this
case, the limitation of liability clause was conspicuously set out in the
contract in all capital letters, with the amount of liability underlined and a
handwritten arrow pointing to the clause. 
The clause also stated in bold that it was not insurance, and Daniel was
aware that insurance was an available option. 
The Fultons were generally familiar with moving services contracts,
having moved approximately eight times and having signed a similar contract
each time they moved.  If the Fultons
were dissatisfied with the limitation of liability provision, they could have
bargained for increased carrier liability or chosen a different moving
company.  Further, there are legitimate
commercial reasons for allowing D=Lux to
limit its liability; prohibiting such clauses could expose moving companies to
significant risks that could vary widely depending on the contents of the
shipment.[16]  Thus, we hold that the limitation of
liability clause in the moving services contract is not unconscionable or
against public policy and that there was not such a disparity in bargaining
power between D=Lux and the Fultons that the
Fultons were forced to consent to the limitation of liability clause. 








IV.  Causation 








In its
second issue, D=Lux contends that there is
legally and factually insufficient evidence to support the trial court=s
finding that the failure to crate the glass table top was the proximate cause
of the Fultons= damages.  Actual damages may be recovered for a breach
of contract only when the loss is the natural, probable, and foreseeable
consequence of the defendant=s
conduct.[17]  The
evidence shows that Daniel expressed a concern about preventing the table tops
from being broken in the move and that Scott Lee, D=Lux=s
representative, assured Daniel that the best way to protect the table tops from
breaking was to crate them.  Further,
Daniel testified that he had had the table tops crated in several other moves
and that they had not been broken. 
Because damage to the table tops was a reasonably contemplated result of
not crating the table tops, the fact that one of the table tops was damaged is
a natural, probable, and foreseeable consequence of D=Lux=s breach
of contract by failing to crate the table top during the move.[18]  Therefore, the evidence is legally and
factually sufficient to support the trial court=s
finding that D=Lux=s
conduct caused the Fultons=
injury.  We overrule D=Lux=s second
issue.

V.  Subject Matter Jurisdiction

In its
third issue, D=Lux contends that the trial
court lacked subject matter jurisdiction over the case because the
uncontroverted evidence established damages at $200, which, according to D=Lux,
renders the case within the exclusive jurisdiction of the justice court, rather
than the district court.[19]  We disagree. 









The
Supreme Court of Texas has recognized that A[u]nless
it is clear from the pleadings that the court lacks jurisdiction of the amount
in controversy, it should retain the case.@[20]  Courts must presume in favor of jurisdiction
unless lack of jurisdiction affirmatively appears on the face of the petition.[21]  Further, even if the jurisdictional amount is
not established by pleading, a litigant may recover by proving jurisdiction at
trial.[22]  In this case, the Fultons sought general
damages in the amount of $2,180 in their second amended petition, and D=Lux=s
general manager admitted at trial that he was willing to pay the Fultons $720
in exchange for a release of liability in this case.  Therefore, it is not clear from the pleadings
that the district court lacked jurisdiction of the amount in controversy, and
the Fultons established jurisdiction by proving it at trial.  We overrule D=Lux=s third
issue. 

VI.  Attorney=s Fees

In its
fourth issue, D=Lux asserts that there is
legally and factually insufficient evidence to support the trial court=s
finding that an award of $12,000 in attorney=s fees
to the Fultons is reasonable because the Fultons=
attorney did not testify that his fees were usual and customary and he did not
testify that the blended rates from several attorneys in his firm were
reasonable or necessary.  








Section 38.001(8)
of the Texas Civil Practice and Remedies Code provides that a party may recover
reasonable attorney=s fees if the claim is for an
oral or written contract.[23]  Here, because D=Lux
breached its written contract with the Fultons, we hold that the Fultons, as
the prevailing party, were entitled to an award of reasonable attorney=s fees.

Section
38.003 provides that A[i]t is presumed that the usual
and customary attorney=s fees for a claim of the type
described in Section 38.001 are reasonable.@[24]  It is well settled that a trial court may
take judicial notice of usual and customary attorney=s fees.[25]  Moreover, even if the trial court did not
state that it was taking such judicial notice, we may presume that the trial
court did so.[26]









Here, the proceeding was
before the court.  Although the trial
court did not state that it was taking judicial notice, we may presume that it
did.[27]  Further, the Fultons= trial
counsel testified regarding his attorney=s fees
as follows:

To date, Maloney, Bean,
Horn & Hull has put in about 30 hours of attorney time, 20 hours of
paralegal time on this matter.  While my
personal rate for commercial matters is $350 an hour, the blended rate from the
several attorneys that worked on this is about $250 an hour.

 

I have been practicing for 25 years, active in litigation that entire
time, including commercial as well as tort and insurance basis.  I=m
knowledgeable for requirements about pursuing such litigation, fees for legal services.  In my opinion, the amount of time put in on
this matter is reasonable and necessary; forty hours attorney time at the
blended rate of $250 an hour, 20 hours of paralegal time at a blended rate of
$100 an hour; the total is $12,000.  








D=Lux did
not object to this testimony.  The main
issue during cross-examination was whether the Fultons=
attorney could justify spending forty hours of attorney time on this case, to
which the attorney responded by providing a lengthy list of tasks his firm
performed during this case.[28]  D=Lux did
not present any contrary evidence indicating that the fees the Fultons=
attorney charged were excessive or unreasonable.  Therefore, we conclude that the evidence is
legally and factually sufficient to support the trial court=s
finding that the award of $12,000 is reasonable.  We overrule D=Lux=s fourth
issue.

VII.  Conclusion

We
reverse the trial court=s judgment on the Fultons= fraud
claim and render judgment that they take nothing on that claim.  Further, we reverse the trial court=s
damages award on the breach of contract claim and render judgment awarding the
Fultons $840 as breach of contract damages. 
We affirm the remainder of the trial court=s
judgment.

 

 

JOHN CAYCE

CHIEF
JUSTICE

PANEL
A:  CAYCE, C.J.; WALKER and MCCOY, JJ.

DELIVERED:  MAY 3, 2007

 











[1]See Tex. R. App. P. 47.4.





[2]Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Anderson v. City of Seven
Points, 806 S.W.2d 791, 794 (Tex. 1991).





[3]Uniroyal Goodrich Tire Co. v.
Martinez, 977
S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999); Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error,
38 TEX. L. REV. 361, 362-63 (1960). 






[4]City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 





[5]Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  





[6]Mar. Overseas Corp. v.
Ellis,
971 S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).





[7]Although D=Lux=s manager, Kevin Topper,
testified that the table top weighed only 300 pounds, the trial court
was free to resolve inconsistencies in the testimony, and D=Lux does not challenge
that finding in its brief.  See McGalliard
v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). 





[8]See Heritage Resources,
Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996) (stating that we must give
contractual terms their plain, ordinary, and generally accepted meaning unless
the instrument shows that the parties used them in a technical or different
sense).





[9]O=Farrill Avila v.
Gonzalez,
974 S.W.2d 237, 247 (Tex. App.CSan Antonio 1998, pet. denied).





[10]809 S.W.2d 493 (Tex.
1991). 





[11]Id. at 494; see Formosa
Plastics Corp. v. Presido Engrs. & Contractors, Inc., 960 S.W.2d 41,
46-47 (Tex. 1998) (discussing how fraudulent inducement is an exception to the DeLanney
rule only when a party is fraudulently induced into entering a contract
because, as a general rule, a party is not bound by a contract procured by
fraud).  





[12]See Formosa Plastics
Corp.,
960 S.W.2d at 46-47; DeLanney, 809 S.W.2d at 494.   





[13]See Allright, Inc. v.
Elledge,
515 S.W.2d 266, 267 (Tex. 1974); Head v. U.S. Inspect DFW, Inc., 159
S.W.3d 731, 748 (Tex. App.CFort Worth 2005, no pet.); Am. Employers= Ins. Co. v. Aiken, 942 S.W.2d 156, 160-61
(Tex. App.CFort Worth 1997, no
writ).  





[14]Head, 159 S.W.3d at 748; Am.
Employers= Ins. Co., 942 S.W.2d at 160.  





[15]Vallance & Co. v.
DeAnda,
595 S.W.2d 587, 590 (Tex. Civ. App.CSan Antonio 1980, no writ); accord Fox Elec.
Co. v. Tone Guard Sec., Inc., 861 S.W.2d 79, 83 (Tex. App.CFort Worth 1993, no
writ).





[16]Cf. Arthur's Garage, Inc.
v. Racal‑Chubb Sec. Sys., Inc., 997 S.W.2d 803, 810-11 (Tex. App.CDallas 1999, no pet.)
(discussing the policy reasons for upholding the use of liability limitation
clauses by burglar and fire alarm companies).





[17]Mead v. Johnson Group,
Inc.,
615 S.W.2d 685, 687 (Tex. 1981); Winograd v. Clear Lake City Water
Auth., 811 S.W.2d 147, 156 (Tex. App.CHouston [1st Dist.] 1991, writ denied).





[18]See Mead, 615 S.W.2d at 687; Winograd,
811 S.W.2d at 156.





[19]See, e.g., Sultan v.
Mathew,
178 S.W.3d 747, 756 nn.7-9 (Tex. 2005) (Hecht, J., dissenting) (quoting Tex. Const. art. V, '' 8, 16, 19 and stating
that the justices of the peace have exclusive jurisdiction over cases where the
amount in controversy is $200 or less; that county courts have exclusive
jurisdiction in all civil cases when the matter in controversy exceeds $200 and
is less than $500, and concurrent jurisdiction with the district court when the
matter in controversy exceeds $500, but is less than $1,000; and that district
courts have original jurisdiction over all suits when the matter in controversy
is over $500).





[20]Peek v. Equip. Serv. Co., 779 S.W.2d 802, 804
(Tex. 1989) (citing Dwyer v. Bassett & Bassett, 63 Tex. 274, 276
(1885)). 





[21]See Cont'l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 449 (Tex. 1996); Peek, 779 S.W.2d at 804
(quoting Smith v. Tex. Improvement Co., 570 S.W.2d 90, 92 (Tex. Civ.
App.CDallas 1978, no writ)).





[22]See Peek, 779 S.W.2d at 804





[23]Tex.
Civ. Prac. & Rem. Code Ann. ' 38.001(8) (Vernon 1997).





[24]Id. ' 38.003; see also
Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999); Arthur Andersen
& Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997) (both
providing a list of factors to consider in determining whether an attorney=s fee is reasonable). 





[25]Gill Sav. Ass'n v. Chair
King, Inc.,
797 S.W.2d 31, 32 (Tex. 1990); Coward v. Gateway Nat=l Bank, 525 S.W.2d 857, 859
(Tex. 1975).





[26]Lefton v. Griffith, 136 S.W.3d 271, 279-80
(Tex. App.CSan Antonio 2004, no
pet.); Laredo ISD v. Trevino, 25 S.W.3d 263, 266 (Tex. App.CSan Antonio 2000, pet.
denied); Inwood Dad's Club, Inc. v. Aldine ISD, 882 S.W.2d 532, 542
(Tex. App.CHouston [1st Dist.] 1994,
no writ); Gen. Life and Acc. Ins. Co. v. Higginbotham, 817 S.W.2d 830,
833 (Tex. App.CFort Worth 1991, writ
denied). 





[27]See Lefton, 136 S.W.3d at 280.





[28]The Fultons= attorney testified that
the tasks his firm performed in this case included requests for disclosures and
responses; requests for production and responses; petition, returned citation,
and answer; amended petition; second amended petition; pursued negotiations;
preparation of exhibit lists; client meetings; obtaining additional documents;
and legal research.