COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-019-CV

D’LUX MOVERS & STORAGE APPELLANT

V.

DANIEL FULTON AND BETSY FULTON APPELLEES

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

 I.  Introduction

In this fraud and breach of contract case, D’Lux Movers & Storage appeals the trial court’s judgment awarding Daniel Fulton and Betsy Fulton $1,640 in damages and $12,000 in attorney’s fees.  In issues one, two, and four, D’Lux argues that the evidence is legally and factually insufficient to establish the award of $1,640 in damages, to show that D’Lux’s actions caused the Fultons’ damages, and to establish that the attorney’s fees awarded were reasonable.  In its third issue, D’Lux contends that the trial court lacked subject matter jurisdiction because the uncontroverted evidence established damages at less than $200.  We affirm in part and reverse and render in part.

II.  Background

The Fultons entered into a moving services contract with D’Lux for the shipment of their household goods.  In the contract, D’Lux agreed to crate and uncrate two of the Fultons’ glass table tops for a total charge of $540.  D’Lux, however, failed to crate the two table tops as agreed, and the movers broke one of the table tops when unloading it. 

The Fultons sued D’Lux for breach of contract, fraud, violations of the Deceptive Trade Practices Act, and negligent misrepresentation.  D’Lux denied the Fultons’ assertions, pleaded that the limitation of liability clause in the contract applied, and requested attorney’s fees under section 38.001 of the civil practice and remedies code.  After a bench trial, the trial court rendered judgment for the Fultons on their breach of contract and fraud claims and awarded the Fultons $1,640 in actual damages and $12,000 in attorneys’ fees.  The trial court filed findings of fact and conclusions of law.  This appeal followed.   

III.  Damages

In its first issue, D’Lux argues that the evidence is legally and factually insufficient to support the trial court’s award of damages in the amount of $1,640, which represents the replacement value of the broken table top plus the amount the Fultons paid for crating they did not receive, and that the breach of contract damages are limited to $180 under a limitation of liability clause in the moving contract. 

A. Standard of Review 

Findings of fact have the same force and dignity as a jury’s answers to jury questions and
 are reviewable for legal and factual sufficiency of the evidence under the same standards applied to jury answers.
(footnote: 2) 
 A legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.
(footnote: 3)  
In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.
(footnote: 4) 

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.
(footnote: 5)  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.
(footnote: 6) 

B.  Limitation of Liability 

The trial court awarded the Fultons “special damages in the amount of $1640“
 based on its findings that the Fultons “suffered special damages in the amount of $1,100.00 for the replacement of the shattered tabletop and were fraudulently charged $540 for the crating that was not performed.” D’Lux asserts that if the moving contract was breached, the Fultons’ damages are limited to $180 under the contract’s limitation of liability clause.  

The contract contains the following limitation of liability clause:

A HOUSEHOLD GOODS CARRIERS LIABILITY FOR LOSS OR DAMAGE TO ANY SHIPMENT 
IS $.60 PER POUND PER ARTICLE,
 UNLESS THE CARRIER AND SHIPPER AGREE IN WRITING TO A GREATER LEVEL OF LIABILITY.  
THIS IS NOT INSURANCE.  

By executing the contract containing this limitation of liability clause, the Fultons agreed to limit D’Lux’s liability for loss or damage to their table top to $.60 per pound.  Therefore, based on the trial court’s finding that the table top weighed 500 pounds, the Fultons are entitled to no more than $300 for the damage to their table top.
(footnote: 7)
 The limitation of liability provision, however, only limits D’Lux’s liability for damage or loss to the Fultons’ goods; it does not purport to limit D’Lux’s liability for breach of the contract by nonperformance.
(footnote: 8)  A nonbreaching party is entitled to recover as damages money that he invested in performing the contract in reliance that the contract would be performed.
(footnote: 9)  

Here, the evidence supports the trial court’s findings that D’Lux charged the Fultons $540 for crating and uncrating the table tops and that D’Lux failed to crate the table tops as required under the contract.  Daniel Fulton testified that he paid $540 for the crating he did not receive. 
 Moreover, Kevin Topper, D’Lux’s general manager, testified that the Fultons paid $540 for the crating service and that D’Lux did not crate the table tops.  Therefore, the Fultons are entitled to recover from D’Lux the $540 that they paid for crating services that D’Lux did not perform.

C. Contract Versus Tort

The Fultons contend that their cause of action against D’Lux sounds in tort and, therefore, the limitation of liability clause does not apply.  According to the Fultons, D’Lux’s promise to crate the table tops fraudulently induced them to forego purchasing insurance to insure the table tops.

In 
Southwestern Bell Telephone Co. v. DeLanney
,
(footnote: 10) the Supreme Court of Texas held,

If the defendant’s conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff’s claim may also sound in tort.  Conversely, if the defendant’s conduct . . . would give rise to liability only because it breaches the parties’ agreement, the plaintiff’s claim ordinarily sounds only in contract. . . . When the only loss or damage is to the subject matter of the contract, the plaintiff’s action is ordinarily on the contract.
(footnote: 11) 

The Fultons’ “fraud” claim hangs entirely on the existence of the moving contract.  D’Lux’s conduct in failing to crate the table tops, as it agreed,  would not give rise to liability independent of the contract.  Instead, D’Lux’s conduct gives rise to liability only because it breached its agreement.  Therefore, the Fultons’ claim sounds only in contract.  D’Lux’s agreement to crate the table tops may have induced the Fultons to forego buying insurance, but it did not induce them to enter into the moving contract.  Accordingly, the Fultons cannot recover tort damages in this case because D’Lux’s conduct does not give rise to liability independent of the fact that a contract exists between the parties
.
(footnote: 12)
D.  Unconscionability 

The Fultons assert that the limitation of liability clause is unconscionable, against public policy, and unenforceable.  In determining whether a limitation of liability clause is unconscionable or against public policy, courts generally consider the entire atmosphere in which the agreement was made
, the bargaining process the parties went through, and whether there is such a disparity in bargaining power between the parties that one party is forced to agree to the exculpatory provision.
(footnote: 13)  Courts also evaluate the fairness of the contractual provision by determining whether there are legitimate commercial reasons that justify its inclusion in the agreement.
(footnote: 14)  If a clause is not unconscionable, it is immaterial whether the limitation of liability is a reasonable estimate of probable damages resulting from a breach.
(footnote: 15)
 In this case, the limitation of liability clause was conspicuously set out in the contract in all capital letters, with the amount of liability underlined and a handwritten arrow pointing to the clause.  The clause also stated in bold that it was not insurance, and Daniel was aware that insurance was an available option.  The Fultons were generally familiar with moving services contracts, having moved approximately eight times and having signed a similar contract each time they moved.  If the Fultons were dissatisfied with the limitation of liability provision, they could have bargained for increased carrier liability or chosen a different moving company.  Further, there are legitimate commercial reasons for allowing D’Lux to limit its liability; prohibiting such clauses could expose moving companies to significant risks that could vary widely depending on the contents of the shipment.
(footnote: 16)  Thus, we hold that the limitation of liability clause in the moving services contract is not unconscionable or against public policy and that there was not such a disparity in bargaining power between D’Lux and the Fultons that the Fultons were forced to consent to the limitation of liability clause. 

IV.  Causation 

In its second issue, D’Lux contends that there is legally and factually insufficient evidence to support the trial court’s finding that the failure to crate the glass table top was the proximate cause of the Fultons’ damages.  Actual damages may be recovered for a breach of contract only when the loss is the natural, probable, and foreseeable consequence of the defendant’s conduct.
(footnote: 17)   The evidence shows that Daniel expressed a concern about preventing the table tops from being broken in the move and that Scott Lee, D’Lux’s representative, assured Daniel that the best way to protect the table tops from breaking was to crate them.  Further, Daniel testified that he had had the table tops crated in several other moves and that they had not been broken.  Because damage to the table tops was a reasonably contemplated result of not crating the table tops, the fact that one of the table tops was damaged is a natural, probable, and foreseeable consequence of D’Lux’s breach of contract by failing to crate the table top during the move.
(footnote: 18)  Therefore, the evidence is legally and factually sufficient to support the trial court’s finding that D’Lux’s conduct caused the Fultons’ injury.  We overrule D’Lux’s second issue.

V.  Subject Matter Jurisdiction

In its third issue, D’Lux contends that the trial court lacked subject matter jurisdiction over the case because the uncontroverted evidence established damages at $200, which, according to D’Lux, renders the case within the exclusive jurisdiction of the justice court, rather than the district court.
(footnote: 19)  We disagree. 
 

The Supreme Court of Texas has recognized that “[u]nless it is clear from the pleadings that the court lacks jurisdiction of the amount in controversy, it should retain the case.”
(footnote: 20)  Courts must presume in favor of jurisdiction unless lack of jurisdiction affirmatively appears on the face of the petition.
(footnote: 21)  Further, 
even if the jurisdictional amount is not established by pleading, a litigant may recover by proving jurisdiction at trial
.
(footnote: 22)  In this case, the Fultons sought general damages in the amount of $2,180 in their second amended petition, and D’Lux’s general manager admitted at trial that he was willing to pay the Fultons $720 in exchange for a release of liability in this case
.
 
 Therefore, it is not clear from the pleadings that the district court lacked jurisdiction of the amount in controversy, and the Fultons established jurisdiction by proving it at trial.  We overrule D’Lux’s third issue. 

VI.  Attorney’s Fees

In its fourth issue, D’Lux asserts that there is legally and factually insufficient evidence to support the trial court’s finding that an award of $12,000 in attorney’s fees to the Fultons is reasonable because the Fultons’ attorney did not testify that his fees were usual and customary and he did not testify that the blended rates from several attorneys in his firm were reasonable or necessary.  

Section 38.001(8) of the Texas Civil Practice and Remedies Code provides that a party may recover reasonable attorney’s fees if the claim is for an oral or written contract.
(footnote: 23)  Here, because D’Lux breached its written contract with the Fultons, we hold that the Fultons, as the prevailing party, were entitled to an award of reasonable attorney’s fees.

Section 38.003 provides that “[i]t is presumed that the usual and customary attorney’s fees for a claim of the type described in Section 38.001 are reasonable.”
(footnote: 24)  It is well settled that a trial court may take judicial notice of usual and customary attorney’s fees.
(footnote: 25)  Moreover, even if the trial court did not state that it was taking such judicial notice, we may presume that the trial court did so.
(footnote: 26) 

Here, the proceeding was before the court.  Although the trial court did not state that it was taking judicial notice, we may presume that it did.
(footnote: 27)  Further, the Fultons’ trial counsel testified regarding his attorney’s fees as follows:

To date, Maloney, Bean, Horn & Hull has put in about 30 hours of attorney time, 20 hours of paralegal time on this matter.  While my personal rate for commercial matters is $350 an hour, the blended rate from the several attorneys that worked on this is about $250 an hour.

I have been practicing for 25 years, active in litigation that entire time, including commercial as well as tort and insurance basis.  I’m knowledgeable for requirements about pursuing such litigation, fees for legal services.  In my opinion, the amount of time put in on this matter is reasonable and necessary; forty hours attorney time at the blended rate of $250 an hour, 20 hours of paralegal time at a blended rate of $100 an hour; the total is $12,000.  

D’Lux did not object to this testimony.  The main issue during cross-examination was whether the Fultons’ attorney could justify spending forty hours of attorney time on this case, to which the attorney responded by providing a lengthy list of tasks his firm performed during this case.
(footnote: 28)  D’Lux did not present any contrary evidence indicating that the fees the Fultons’ attorney charged were excessive or unreasonable.  Therefore, we conclude that the evidence is legally and factually sufficient to support the trial court’s finding that the award of $12,000 is reasonable.  We overrule D’Lux’s fourth issue.

VII.  Conclusion

We reverse the trial court’s judgment on the Fultons’ fraud claim and render judgment that they take nothing on that claim.  Further, we reverse the trial court’s damages award on the breach of contract claim and render judgment awarding the Fultons $840 as breach of contract damages.  We affirm the remainder of the trial court’s judgment.

JOHN CAYCE

CHIEF JUSTICE

PANEL A:  CAYCE, C.J.; WALKER and MCCOY, JJ.

DELIVERED:  MAY 3, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Ortiz v. Jones,
 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel,
 881 S.W.2d 295, 297 (Tex. 1994); 
Anderson v. City of Seven Points
, 806 S.W.2d 791, 794 (Tex. 1991)
.

3:
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
.  

4:
City of Keller v. Wilson
, 
168 S.W.3d 802, 827
 (Tex. 2005). 

5:
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  

6:
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

7:
Although D’Lux’s manager, Kevin Topper, testified that the table top weighed only
 
300 pounds, the trial court was free to resolve inconsistencies in the testimony, and D’Lux does not challenge that finding in its brief.  
See McGalliard v. Kuhlmann
, 722 S.W.2d 694, 697 (Tex. 1986). 

8:
See Heritage Resources, Inc. v. NationsBank
, 939 S.W.2d 118, 121 (Tex. 1996) (stating that we must give contractual terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense).

9:
O’Farrill Avila v. Gonzalez,
 974 S.W.2d 237, 247 (Tex. App.—San Antonio 1998, pet. denied).

10:
809 S.W.2d 493 (Tex. 1991). 

11:
Id. 
at 494; 
s
ee Formosa Plastics Corp. v. Presido Engrs. & Contractors, Inc.
, 960 S.W.2d 41, 46-47 (Tex. 1998) (discussing how fraudulent inducement is an exception to the 
DeLanney
 rule only when a party is fraudulently induced into entering a contract because, as a general rule, a party is not bound by a contract procured by fraud). 
 

12:
S
ee Formosa Plastics Corp.
, 960 S.W.2d at 46-47; 
DeLanney
, 809 S.W.2d at 494.  
 

13:
See Allright, Inc. v. Elledge
, 515 S.W.2d 266, 267 (Tex. 1974);
 
Head v. U.S. Inspect DFW, Inc.
, 159 S.W.3d 731, 748 (Tex. App.—Fort Worth 2005, no pet.); 
Am. Employers’ Ins. Co. v. Aiken
, 942 S.W.2d 156, 160-61 (Tex. App.—Fort Worth 1997, no writ).  

14:
Head
, 159 S.W.3d at 748; 
Am. Employers’ Ins. Co.
, 942 S.W.2d at 160.  

15:
Vallance & Co. v. DeAnda,
 595 S.W.2d 587, 590 (Tex. Civ. App.—San Antonio 1980, no writ); 
accord Fox Elec. Co. v. Tone Guard Sec., Inc.,
 861 S.W.2d 79, 83 (Tex. App.—Fort Worth 1993, no writ).

16:
Cf. Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.
, 997 S.W.2d 803, 810-11 (Tex. App.—Dallas 1999, no pet.) (discussing the policy reasons for upholding the use of liability limitation clauses by burglar and fire alarm companies).

17:
Mead v. Johnson Group, Inc.
, 615 S.W.2d 685, 687 (Tex. 1981); 
Winograd
 
v. Clear Lake City Water Auth.
, 811 S.W.2d 147, 156 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

18:
See Mead
, 615 S.W.2d at 687; 
Winograd
, 811 S.W.2d at 156.

19:
See, e.g., Sultan v. Mathew
, 178 S.W.3d 747, 756 nn.7-9 (Tex. 2005) (Hecht, J., dissenting) (quoting 
Tex. Const.
 art. V, §§ 8, 16, 19 and stating that the justices of the peace have exclusive jurisdiction over cases where the amount in controversy is $200 or less; that county courts have exclusive jurisdiction in all civil cases when the matter in controversy exceeds $200 and is less than $500, and concurrent jurisdiction with the district court when the matter in controversy exceeds $500, but is less than $1,000; and that district courts have original jurisdiction over all suits when the matter in controversy is over $500).

20:
Peek v. Equip. Serv. Co.
, 779 S.W.2d 802, 804 (Tex. 1989) 
(citing
 Dwyer v. Bassett & Bassett
, 63 Tex. 274, 276 (1885)). 

21:
See Cont'l Coffee Prods. Co. v. Cazarez
, 937 S.W.2d 444, 449 (Tex. 1996)
; Peek
, 779 S.W.2d at 804 (quoting 
Smith v. Tex. Improvement Co.
, 570 S.W.2d 90, 92 (Tex. Civ. App.—Dallas 1978, no writ)).

22:
See Peek
, 779 S.W.2d at 804

23:
Tex. Civ. Prac. & Rem. Code Ann.
 § 38.001(8) (Vernon 1997).

24:
Id. 
§ 38.003; 
see also Garcia v. Martinez
, 988 S.W.2d 219, 222 (Tex. 1999);
 Arthur Andersen & Co. v. Perry Equip. Corp.
, 945 S.W.2d 812, 818 (Tex. 1997) (both providing a list of factors to consider in determining whether an attorney’s fee is reasonable). 

25:
Gill Sav. Ass'n v. Chair King, Inc.
, 797 S.W.2d 31, 32 (Tex. 1990);
 Coward v. Gateway Nat’l Bank
, 525 S.W.2d 857, 859 (Tex. 1975).

26:
Lefton v. Griffith
, 136 S.W.3d 271, 279-80 (Tex. App.—San Antonio 2004, no pet.); 
Laredo ISD v. Trevino
, 25 S.W.3d 263, 266 (Tex. App.—San Antonio 2000, pet. denied);
 Inwood Dad's Club, Inc. v. Aldine ISD
, 882 S.W.2d 532, 542 (Tex. App.—Houston [1st Dist.] 1994, no writ
); 
Gen. Life and Acc. Ins. Co. v. Higginbotham
, 817 S.W.2d 830, 833 (Tex. App.—Fort Worth 1991, writ denied). 

27:
See Lefton
, 136 S.W.3d at 280.

28:
The Fultons’ attorney testified that the tasks his firm performed in this case included requests for disclosures and responses; requests for production and responses; petition, returned citation, and answer; amended petition; second amended petition; pursued negotiations; preparation of exhibit lists; client meetings; obtaining additional documents; and legal research.